UNION FIRE INS. CO. (SCANLON v.). See Case No. 12,436.

———

## Case No. 14,365.

### UNION HORSE SHOE WORKS v. LEWIS.

[1 Abb. U. S. 518.] [1]

Circuit Court, D. Rhode Island. Feb. Term, 1870.

CORPORATIONS—STATE STATUTES—RIGHT TO SUE.

1. In an action brought by plaintiffs, claiming to sue as a corporation, the defendant, by plea, denied the plaintiffs' incorporation; setting up a general statute of the state which prohibited any charter from taking effect until a certain fee should have been paid into the state treasury; and averring that the plaintiffs had not made the required payment. It appeared that the fee was not paid until after the plea was filed. *Held,* that the circuit court was bound to take notice of the state statute, and to enforce it, in the same manner as the state courts would do.

2. Under the statute, the plaintiffs were not competent to sue as a corporation, at the time of commencing their action, by reason of the omission to make the payment required; and the plea must therefore be sustained.

[Cited in Broadwell v. Merritt, 87 Mo. 96. Cited in brief in Slocum v. Providence Steam & Gas-Pipe Co., 10 R. I. 114.]

At law. Hearing upon an agreed statement of facts.

Benjamin F. Thurston, for plaintiffs.
Mr. Essex, for defendant.

KNOWLES, District Judge. I have given to the question presented by the plea filed in this cause due consideration, and would now announce to counsel and parties the results. The plaintiffs, as holders by assignment of certain letters patent, file their bill, May 20, 1869; the defendant makes appearance July 5; and, on July 26 files a plea in abatement of the suit. To this, the plaintiffs reply, September 22, traversing the plea, and upon the issue presented the learned

counsel of the parties have been fully heard at chambers.

The plaintiffs' objection to the form of the plea,[2] I adjudge groundless in view of the stage of the cause at which the plea is filed, the nature of the allegation which it embodies, and the rules of equity pleading as set forth in Story, Eq. Pl. §§ 668, 669, and notes, and section 727, and 2 Daniell, Ch. Pl. & Prac. 718.

The question raised by the plea is, were the plaintiffs a corporation, competent to sue, at the date of the filing of their said bill? The plaintiffs style themselves, "The Union Horse Shoe Works, a corporation duly created by the general assembly of the state of Rhode Island, located and doing business at Providence, in said state and district of Rhode Island;" and it is not questioned that they are bound at some stage of the suit to prove satisfactorily their title thus to describe themselves—at this stage, if required by special plea,—at a later stage, had the defendant negatived the allegation in an elaborated answer. Nor is it questioned, that a failure to establish their title in this regard, were as serious a mischance at one stage as at another. But by interposing this plea, the defendant wisely constrains the plaintiffs now at the outset, to establish their right to call upon him to answer their complaints and interrogatories. He denies that they are a corporation duly created by the general assembly of the state of Rhode Island, and the plaintiffs, in reply, reaffirm the allegation of their bill.

No question was raised as to the burden of proof upon the issue—the plaintiffs seemingly conceding that it was incumbent upon them, on exhibition of the plea, verified by the affidavit of the defendant, to make proof of their capacity to bring and maintain their suit, so far as questioned by the plea. Accordingly, a copy of an act of incorporation, certified by the secretary of state, under the state seal, to be an act of the general assembly of Rhode Island, at its May session, 1867, was exhibited,—the certificate, however, bearing date November 10, 1869. This instrument, the plaintiffs as a first point aver, is conclusive proof upon the issue in their favor. And in this averment I should readily concur, were the secretary's certificate of a date prior to that of the commencement of this suit, and were there not on file an agreed statement of facts to which heed must be given. Among these facts are these:

———

2 The objection taken to the form of the plea was, as appears from the brief filed by the counsel for plaintiffs, that the plea simply set forth that the plaintiffs were not a corporation, duly organized under the laws of the state, without alleging what particular defect in organization, or in the act of incorporation, was relied on to defeat their corporate existence; thus leaving the plaintiffs unapprised of the objection they were required to meet.

I. That one of the laws of the state, enacted by the general assembly in 1863, and still in force, is the following (chapter 475), entitled, "An act in addition to ch. 12 of the Revised Statutes, 'Of the Revenue of the State:'"

"§ 1. No act of incorporation hereafter granted for any other than for religious, literary, charitable or cemetery purposes, or for a military or fire company, shall take effect until the persons therein incorporated shall have paid to the general treasurer the sum of one hundred dollars, if the capital limited by such act of incorporation is the sum or any less sum than one hundred thousand dollars; and if the capital stock limited by such act of incorporation exceeds the sum of one hundred thousand dollars, one-tenth of one per cent. on the amount of the capital stock authorized by such act of incorporation.

"§ 2. This act shall take effect immediately after the passage thereof. Provided, however, that nothing herein contained shall be construed to require any such payment before the taking effect of any bank charter, when provision is made for specific taxation upon the capital stock of such bank."

II. That the plaintiffs had not, at the date of the filing of defendant's plea, paid the tax or fee required by said act of 1863, but had since, on October 1, 1869, paid the same.

With these facts before me, of the first of which, by the way, I am bound to take notice judicially, I am not warranted in regarding the certified copy of the charter as satisfactory proof of the plaintiffs' averment of personality—of a legal existence—in May, 1869.

I am unquestionably bound to deal with this plea, as it would, in my judgment, be dealt with by the supreme court of the state, and of course to give that consideration to all the state laws which that court, as a co-ordinate branch of the government, or as a branch subordinate to the general assembly, would give to them. And here is brought to my notice a general law of the state, the aim and intent of which is apparent at a glance, and the expediency and importance of which cannot be questioned. It is a parcel of the legislation which provides for the raising of moneys for the thousand uses and needs of the state, staggering under its millions of debt, and cannot be, in my view, either ignored or adjudicated a nullity by the state's judicial servants. And in view of this law of 1863, still in force, the defendant contends that, inasmuch as the payment required was not made until October, 1869, there was in being in May, 1869, no person (a corporation being in law a person) known as, or entitled to claim to be, "The Horse Shoe Works." And this position I am constrained to adjudge a tenable one, in the absence of any adjudication to the contrary by the

supreme court of the state, or its co-ordinate or supervisor, the general assembly. So long as the law of 1863 stands unrepealed, the payment it enjoins is a condition precedent of the existence of a business corporation, for any purpose whatever. Until such payment the act is not to take effect —the paper on which it is written or printed is, in contemplation of law, a blank. What the practice of the state's secretary may be, I am uninformed, but I presume it to be what it should be—that is, to withhold from any applicant a certified copy of a charter under seal, until evidence is furnished that the act of incorporation has ceased to be merely a charter in embryo, and become of effect, by payment as prescribed by the parties incorporated. As already intimated, had the date of the secretary's certificate been a few months earlier, I should have received it as plenary evidence, unimpeachable otherwise than in proceedings instituted on behalf of the state. The position taken by the plaintiffs as to this point is well sustained by authority, as a dictate of common sense is usually found to be: but it seems necessary here only to say in regard to it, that under the facts in this case, I arrive at a determination of the mooted question before reaching that position.

The case is strictly sui generis—purely a Rhode Island case; for in no other state, it may safely be assumed, is to be found a general law like that of 1863—like in its terms, its scope, or its purposes. It may be that in some other states legislators are wont to frame and pass acts of incorporation, by scores and hundreds, notoriously of so little worth and so little needed that to compel the parties interested to pay for them a trifling tax to the state, a law like this is indispensable—but the proof hereof is yet to be furnished. For precedents of any practical value, therefore, it is of as little avail to search the court reports of other states as it ever has been, still is, and forever will be, when the point in question arises upon or under Rhode Island's charter from Charles II., or her constitution of 1843, with its section 10 of article 3, or the acts of her general assembly of any date, relating to bodies corporate of any species, the land titles of the aborigines or of the old proprietors, the tide flowed lands within her borders, or, indeed, any other subject of legislative action.

In most, if not in all the states of the Union, it is prescribed by a general law, or by a constitutional provision, at what period after its passage an enactment of the legislature shall take effect; and the case, I apprehend, is not to be found where a court has failed to regard such a law or provision as an inflexible rule of procedure. Section 19 of chapter 6 of the Revised Statutes of Rhode Island ordains that "every statute which does not expressly prescribe the time when it

shall go into operation, shall take effect on the tenth day next after the rising of the general assembly at the session thereof in which the same shall be passed." This provision of the statutes, it is believed, is respected as paramount law by the courts, and the legislators of the state; and that the law of 1863, relating especially to acts of incorporation, is not equally entitled to respect, and equally respected, is yet to be shown.

The point secondly raised by the plaintiffs, —that they are a corporation de facto,—I adjudge not sustainable as made under this plea. The many cases that may be cited from the thousand volumes of American or English reports, seemingly sustaining it, will be found easily distinguishable from that presented in this record. The claim here is, that the Horse Shoe Works is a corporation legally created by the general assembly, by a charter produced and exhibited. This is the question distinctly raised by the plea— the only issue,—and a court which finds upon the facts and law that the instrument relied on was of no effect, at the commencement of the suit, because the parties interested omitted to make payment of the prescribed tax or fee, cannot be expected to adjudge that because, for a year or two, certain persons have wrongly assumed to be, what they are not, a body corporate, created by the state, they are now to be recognized as a corporation either de jure or de facto, entitled to institute and maintain suits in equity for discovery or relief against a tax-paying citizen of that state.

In a word, I adjudge a payment of the tax or fee as required by the act of 1863, to be a condition precedent, with which persons incorporated must comply. Of the intent of the legislature, and of the obligations of a Rhode Island court to conform their rulings to that intent, I cannot entertain a doubt. Says Dwarris on Statutes (page 726), quoted with approval in 1 Kent. Comm. 464: "For the sure and true interpretation of all statutes, whether penal or beneficial, four things are to be considered: What was the common law before the act? What was the mischief against which the common law does not provide? What remedy has parliament provided to cure the defect? And what is the true reason of the remedy? It is held to be the duty of the judges to make such a construction as shall repress the mischief and advance the remedy." I adjudge the plea sustained, and order judgment accordingly. Judgment for defendant.

---

UNION INDIA–RUBBER CO. (DAY v.). See Case No. 3.691.

UNION INDIA–RUBBER CO. (GOODYEAR v.). See Case No. 5,586.

UNION INDIA–RUBBER CO. (NEW ENGLAND CAR–SPRING CO. v.). See Case No. 10.153.

UNION INS. CO. (BAUDUY v.). See Case No. 1,112.

UNION INS. CO. (BIAYS v.). See Case No. 1,383.

UNION INS. CO. (HOWE v.). See 42 Cal. 529.

UNION INS. CO. (HUMPHREYS v.). See Case No. 6,871.

UNION INS. CO. (HURTIN v.). See Case No. 6,942.

UNION INS. CO. (MARSHALL v.). See Cases Nos. 9,133–9,135.

UNION INS. CO. (QUEEN v.). See Case No. 11,505.